Harlan E. **BAXTER** and Imogene Baxter, Appellants,

v.

**COMMISSIONER OF INTERNAL REV-ENUE,** Appellee.

Lovell J. **PROBY** and Eva M. Proby, Appellees,

v.

**COMMISSIONER OF INTERNAL REV-ENUE,** Appellant.

**Nos. 24736, 24868.**

United States Court of Appeals, Ninth Circuit.

Oct. 14, 1970.

Joseph H. Trethewey (argued), Meade Emory, Seattle, Wash., for Harlan E. Baxter.

Stephen Hutzelman (argued), Atty., Tax Division, K. Martin Worthy, Chief Counsel, IRS, Johnnie M. Walters, Asst.

Atty. Gen., U. S. Dept. of Justice, Washington, D. C.; John T. Piper, of Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for Commissioner of Internal Revenue.

John T. Piper (argued), of Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for Lovell J. Proby.

Before HAMLEY and WRIGHT, Circuit Judges, and GOODWIN,* District Judge.

GOODWIN, Judge:

Two decisions of the Tax Court are combined for review. Taxpayers Harlan and Imogene Baxter seek to reverse a decision in favor of the Commissioner, and Taxpayers Lovell and Eva Proby seek to sustain a decision in their favor against the Commissioner. The Commissioner seeks review of the Proby decision only by way of a protective petition, i. e., asking reversal of Proby only if the Baxter decision is reversed.

The facts, substantially as found by the Tax Court, are summarized as follows:

Between 1945 and 1959, Proby developed a profitable business selling traffic-light systems to municipal governments in the Pacific Northwest. Proby's most valuable contract was a franchise, personal to himself, and cancelable on thirty days' notice, under which Proby had the exclusive right to sell Eagle Signal Company equipment in the states of Oregon and Washington. This franchise was, by its terms, "nontransferable."

In 1959, Proby employed Baxter as a salesman. Baxter was a former traffic engineer with the City of Eugene, Oregon, and was widely acquainted with traffic engineers in other cities in the region. Proby, during this period, began developing an orchard, and devoted substantial time to this activity. Baxter meanwhile covered the territory as the principal sales person for Proby.

In 1960, Baxter became a "joint venturer," under a written agreement with Proby. But sales commissions continued to be paid to Proby as an individual. Eagle Signal Company and other companies continued their franchises with Proby, apparently without knowledge of the joint venture. For tax purposes, the business was operated during 1960 and 1961 as a partnership.

In 1962, Proby desired further to limit his personal activities in the traffic-light business, and Baxter at the same time desired to take over the business. After negotiations between Proby and Baxter, the two men on May 25, 1962, executed an agreement entitled "Conditional Sale Contract," under which Proby, as "Vendor," sold to Baxter, as "Vendee," all "traffic and public safety equipment franchises presently held by Proby, including, but not limited to the Eagle Signal Company franchise."

After prefatory language in the memorandum to the effect that the parties "wish to terminate" their joint venture, the document proceeds in the language of an ordinary title-retaining contract for the sale of personal property. Baxter agreed to pay for the franchises one third of the gross monthly income (commissions) derived from sales under the franchises for the next four years. Baxter recited his knowledge of the personal and transient character of Proby's franchises and his willingness nonetheless to accept the franchises "as is."

The evidence suggests that Baxter expected to move gradually into the place occupied by Proby in the esteem of the various signal equipment manufacturers and eventually to take over, more or less by accretion, the beneficial relations enjoyed by Proby with the manufacturers. Presumably at some time in the future Baxter would seek formal recognition from the suppliers. Meanwhile, Proby and Baxter agreed not to disclose to Proby's franchisers the fact of the sale. During the tax years in question, the

* The Honorable Alfred T. Goodwin, District Judge for the District of Oregon, sitting by designation.

equipment manufacturers continued to make their payments to Proby innocent of knowledge that Proby had sold his franchises to Baxter.

Proby each year received the gross commissions and retained one third for himself. He transmitted by personal check to Baxter the remaining two thirds of the commissions earned from the various equipment manufacturers.

During the contract negotiations, Proby had received the benefit of competent tax counsel, but Baxter was unrepresented. Proby obviously intended the sale agreement to provide a foundation for capital gains treatment of his gain on the sale of a capital asset, under Int. Rev.Code of 1954, 26 U.S.C. § 741. Baxter's intent, apparently, was to move into Proby's shoes as the proprietor of a traffic-signal sales agency.

Baxter testified in the Tax Court that he intended merely to dissolve a joint venture and settle with his former joint adventurer by means of distributive shares of partnership income. According to Baxter's theory, the partnership would terminate with the final payment, four years after the sale was made.

■ The Tax Court found, however, that the agreement meant what it said. Proby was presently selling to Baxter the tools of an advantageous business relationship which Baxter was taking over in the hope that the relationship would eventually ripen into franchises in his own name. For this expectation, Baxter promised to pay Proby one third of the gross commissions earned during the next four years. On its face, the agreement transferred to Baxter all risk of loss and all right to receive gross income from the business. There was no evidence to contradict this apparent intention.

Whether or not the rights Proby purported to sell to Baxter can be characterized as "good will," the Tax Court correctly held that the rights were sold, and that, whatever they were called, they constituted capital assets of Proby. The Tax Court accordingly allowed Proby's treatment of the proceeds of the sale as a capital gain under Section 741, and disallowed Baxter's attempt to exclude Proby's third of the gross income from the Baxters' joint income tax return.

■ In this litigation there has been no claim of fraud. Accordingly, Baxter may not challenge the tax consequences of the agreement which he voluntarily and knowingly made. Rogers v. United States, 290 F.2d 501 (9th Cir. 1961).

We are satisfied that the evidence fully supported the Tax Court's decision. Baxter had purchased from Proby everything that Proby could sell (and more) with relation to the Proby business. From the date of purchase forward, Baxter was entitled, as between himself and Proby, to receive the gross income. Baxter, in effect, paid the purchase price to Proby out of the receipts of the franchise business as much as if Baxter had bought log trucks from Proby and had agreed to pay for them out of their gross earnings from hauling.

■ The Baxters have objected to the refusal of the Tax Court to allow discovery, prior to trial, by taking Proby's deposition, or otherwise. We do not decide whether, in consolidated cases in which the taxpayers have interests adverse to each other, the denial of all discovery may never be error. See Rule 45 of the Tax Court Rules of Practice. It is sufficient to note that in these consolidated cases no showing of prejudice was made. It appears that Baxter desired to investigate Proby's records and witnesses prior to the trial. If so, Baxter did not comply with Rule 45. It does not appear that the refusal of the Tax Court to order discovery denied Baxter due process of law. The Baxters were able to present fully in their own case all information concerning Proby's tax records that was relevant to the Baxter case. General discovery could have added nothing that was material in the Baxter case.

The Tax Court decision is affirmed in each case.