SHANNON F. and GLADYS S. HOLLINGSWORTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hollingsworth v. Commissioner
Docket No. 1943-72.
United States Tax Court
T.C. Memo 1973-179; 1973 Tax Ct. Memo LEXIS 102; 32 T.C.M. (CCH) 843; T.C.M. (RIA) 73179; August 20, 1973, Filed *102 HELD: Agreement whereby the purchaser of a going brokerage business paid the seller a percentage of the commissions earned on the existing accounts represented payments for the acquisition of goodwill and, as such, were not deductible as an ordinary and necessary business expense of the purchaser under Sec. 162, I.R.C. 1954. John G. Rocovich, Jr. and William L. Martin, for the petitioners. Robert E. Lee and J. Doyle Tumbleson, for the respondent. QUEALY 2
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent has determined deficiencies in income tax to be due from the *103 petitioners for the taxable years 1966 and 1967 in the amounts of $4,392.46 and $5,422.84, respectively. Certain adjustments were made by respondent in the statutory notice of deficiency to which petitioners have neither alleged any error in their petition nor adduced any evidence at the trial. They will therefore be deemed to have conceded the propriety of those adjustments. Accordingly, the sole question remaining for decision is whether certain amounts paid by Shannon F. Hollingsworth to the sellers of two food brokerage businesses constituted ordinary business expenses deductible under section 162. [1]
Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. FINDINGS OF FACT Petitioners are husband and wife whose legal residence at the time the petition herein was filed was in Roanoke, Virginia. [2] Joint Federal income tax returns were duly filed by petitioners for the taxable years 3 1966 and 1967 with the district director of internal revenue at Richmond, Virginia. *104 Prior to 1964, petitioner owned and operated a food brokerage business trading under the name of Allied Sales Company in Roanoke, Virginia. Early in 1964, Hollingsworth decided to expand his food brokerage business into the Richmond, Virginia, area. Prior to 1964, LeRoy E. Crowder (hereinafter sometimes referred to as "Crowder") owned 100 percent of the stock of, and operated, the LeRoy W. Crowder Company, Inc., a food brokerage business located in Richmond, Virginia. The LeRoy W. Crowder Company, Inc. was founded by Crowder's father in 1930 as a sole proprietorship and was incorporated in 1947. As of 1964, it had been in continuous operation in Richmond for 34 years. Early in 1964, Hollingsworth learned that Crowder had become disillusioned with the food brokerage business and wanted to get out. In February or March of that year, Hollingsworth and Crowder began a series of negotiations over the purchase by Hollingsworth of Crowder's stock in the LeRoy *105 W. Crowder Company, Inc. In May of 1964, an agreement was drafted whereby Hollingsworth was to purchase Crowder's stock in the 4 LeRoy W. Crowder Company, Inc., but the agreement was never executed. Subsequent thereto, negotiations continued for the purchase of Crowder's business. On June 29, 1964, Crowder, as sole stockholder of LeRoy W. Crowder Company, Inc., executed and approved a "Plan and Consent to Liquidation of LeRoy W. Crowder Co., Incorporated" under which the corporation was dissolved and all of its assets were transferred to Crowder. On July 1, 1964, Hollingsworth and Crowder executed a purchase agreement for certain food brokerage accounts, leases, and office furniture and fixtures of the food brokerage business with Crowder acting in an individual capacity. That agreement provided, in pertinent part: WHEREAS, The Seller is the sole owner of certain food brokerage accounts; certain leases; and certain office furniture and fixtures; and WHEREAS, the Buyer is desirous of buying those certain food brokerage accounts; those certain leases; and that certain office furniture and fixtures; and WHEREAS, the Buyer intends to open a food brokerage business *106 in the City of Richmond as a sole proprietorship, trading as, at the outset, Crowder Brokerage Company, hereinafter referred to as the "COMPANY". NOW, THEREFORE, in consideration of the mutual promises and undertakings herein recited and the sum of One ($1.00) Dollar and other good and valuable consideration paid by each of the parties hereto to the other, receipt of which is hereby acknowledged, the parties hereto do hereby agree and covenant as follows: 5 1. The Seller agrees to sell to the Buyer and the Buyer agrees to purchase from the Seller the said food brokerage accounts and the Buyer agrees for himself, the Company, their successors, assigns and heirs, to pay in cash, 10% of all of the gross commissions earned for 120 months after the date of transfer of the accounts aforesaid, * * * said 10% of all gross commissions earned payable in 120 payments over a period of 120 months beginning the first day of September, 1964 * * *. 2. Seller agrees to transfer to Buyer and Buyer agrees to accept and assume a certain lease on office space located at 2910 W. Clay Street in Richmond, Virginia. 3. Seller agrees to sell to the Buyer and the Buyer agrees to purchase from *107 the Seller certain office furniture and fixtures listed on Exhibit B attached hereto and incorporated by reference as a part hereof for the sum of Four Thousand Four Hundred Eighty and 71/100 ($4,480.71) Dollars cash payable on the date of transfer. 4. The Seller agrees to be employed in the capacity of a consultant to the company without compensation, except that the Buyer for himself and the Company, agrees to furnish the Seller an automobile and normal business expenses after the date of transfer and until December 31, 1964, for the purpose of assisting in the orderly transition of the management of the accounts aforesaid, however, this agreement to sell is not conditioned on the full time activity by the Seller on behalf of the Company after the date of transfer * * * and he is to devote such time as he, in his sole discretion, feels necessary to fulfill his commitments as a consultant. 6 5. It is understood and agreed by and between the parties hereto that the payment of 10% of the gross monthly commissions, as aforesaid, was arrived at and agreed upon based on certain brokerage accounts which are the property of the Seller. * * * If at any time during the 120 month *108 period hereinbefore recited, any of the accounts * * * are lost as a result of the Buyer or the Company resigning said account or accounts, the total balance then due on said account or accounts will be the commissions for the year 1963 on those particular accounts less any payments made on the 10% monthly commissions to the date of such resignation; that * * * due and payable within 30 days of the resignation of that account. The loss of any account or accounts must occur for the explicit reason that the Buyer or his successors or assigns or the Company has resigned said account in order for the total amount to be due in 30 days as aforesaid * * *. 6. The Seller agrees not to represent any accounts which are in competition to or in direct conflict with those * * * [accounts transferred] * * * only through the period up to December 31, 1964. * * * 8. The Seller will have prior approval and the right to revise and amend all bullentins [bulletins] [sic], notices and communications sent by the Buyer or the Company to any of the accounts * * * only through December 31, 1964. * * * 11. This agreement embodies the entire understanding of the parties and they agree *109 that there are no separate agreements, oral or written, not covered by this agreement. This agreement shall be binding upon and shall run to the benefit of the parties hereto, their legal representatives, heirs, successors or assigns. 7 WITNESS the following signatures and seals the day and month first above written. /s/ LeRoy Ernest Crowder (SEAL) /s/ S. F. Hollingsworth (SEAL) The food brokerage accounts referred to in the purchase agreement arose from written or oral contracts previously maintained by Crowder with various principals. Such contracts generally give the broker the right to represent the principal in marketing its products in a specified geographic area. In return, the broker receives a specified commission, usually 10 percent, based upon the volume of goods he brokers. Hollingsworth and Crowder planned a gradual disclosure of the new ownership of the brokerage firm which began trading as Crowder Brokerage Company, a sole proprietorship, on July 1, 1964. Hollingsworth employed one Earl Swope to manage the business. Pursuant to the plan of gradual disclosure, on July 1, 1964 Crowder executed the following letter addressed to members of "the trade": *110 Effective immediately, the name of this brokerage firm has been changed to: CROWDER BROKERAGE COMPANY There is no change in our telephone number, address, consignment warehouse or personnel. We would appreciate your changing your records accordingly. 8 We hope to be able to continue to serve you as we have in the past. Very truly yours, LeROY E. CROWDER Crowder Brokerage Company Suite 214 - 2910 West Clay Street Richmond, Virginia 23230 By letter dated October 1, 1964, Crowder notified "Our Principals and Manufacturers" that Earl Swope "has acquired an interest in this business" and that he would be jointly responsible with Crowder for general management of the business. On November 16, 1964, Crowder, in a letter addressed to "Our Customers and Principals," notified them that Crowder Brokerage Company had merged with Allied Sales Company of Roanoke, Virginia, earlier in the year. The letter stated that "Each company will remain autonomous and operate as a separate unit, * * *. Our company name will not change, and your contracts and dealings with us will remain the same." By letter dated January 11, 1965, Crowder notified "Friends and Associates in the *111 Food Business" that he was no longer associated in the active management of 9 Crowder Brokerage Company. The letter further stated that "the business will continue as it has in the past with EARL SWOPE as its General Manager, giving both its customers and manufacturers the same service that it has in past years." Crowder drafted each of the foregoing letters, the contents of which were known to and approved by Hollingsworth. Other than the drafting of the letters and three or four trade calls made to introduce Earl Swope to the Richmond trade, Crowder's services were apparently limited to answering incidental questions. From July 1, 1964 to 1968, Hollingsworth used the name Crowder Brokerage Company in his Richmond brokerage business, which was incorporated in that name prior to the fall of 1968. In the fall of 1968, Crowder sued Hollingsworth in the Law and Equity Court of the City of Richmond to prevent Hollingsworth from using the Crowder name in connection with his food brokerage business in Richmond. The Law and Equity Court of the City of Richmond decided that Hollingsworth was entitled to continue using the Crowder name. 10 On December 2, 1968, Crowder *112 sent the following letter to his former clients: TO WHOM IT MAY CONCERN: As you probably know, I sold some of the accounts in my Food Brokerage business to Mr. S. F. Hollingsworth of Allied Sales Company, Roanoke, Virginia in 1964. At that time Mr. Hollingsworth wished to use the CROWDER name for a short transitional period until he could become established in the Richmond, Virginia market. Therefore, he began trading as CROWDER BROKERAGE COMPANY, and made W. Earl Swope his Manager in Richmond. The continued use of my family name in their business over my objections and the resulting confusion in some trade circles as to my connection with them has prompted this letter to you. In order to set the record straight, I have never been an owner of or an officer in Crowder Brokerage Company, its successor or any other endeavors of Mr. Hollingsworth's or Mr. Swope's, nor have I been responsible for management policies set down by their companies or individuals since 1964. Very truly yours, /2/ LeROY ERNEST CROWDER Hollingsworth has continued to operate his food business in Richmond to the present date using the Crowder name. The Crowder Brokerage Company has lost approximately *113 fifteen of the accounts identified in the sales contract. 11 With but one exception these accounts were lost because the principal decided to sell directly through its own sales staff, because of the consolidation of principals, or because the principal went out of business. During 1966 and 1967, pursuant to the contract of July 1, 1964, Crowder Brokerage Company paid Crowder $7,986.29 and $8,761.59, respectively. On their 1966 and 1967 federal income tax returns, the petitioners deducted the respective amounts as commissions. On November 1, 1966, Hollingsworth entered into an agreement with the Yancy Brokerage Company of Bluefield, West Virginia, whereby Hollingsworth agreed to purchase the food brokerage business and certain furniture and fixtures of Yancy Brokerage Company. The Yancy agreement is similar in all essential aspects to the agreement of July 1, 1964, between Hollingsworth and Crowder. During 1967, Hollingsworth, trading as Allied Yancy Sales Co., paid the former owner of the Yancy Brokerage Company $1,466.60 pursuant to the contract of November 1, 1966. On their 1967 Federal income tax return, the petitioners deducted this amount as a brokerage fee. *114 The parties are in agreement that our decision with respect to the Crowder transaction will be determinative of the Yancy transaction as well. 12 OPINION The sole question for decision is whether the petitioner is entitled to deduct certain payments to the seller of a food brokerage business acquired by the petitioner pursuant to an agreement whereby the petitioner purchased the fixed assets, took over the lease, and agreed to pay the seller a percentage of the commissions earned on account of business with the former customers of the seller. Pursuant to the agreement, the seller was obligated to refrain from competion for a period of six months and to assist in the orderly transfer of the business to the petitioner. Every effort was made to maintain the relationship of the seller with his former customers, including the use of his name in the continuation of the business. At the trial and in the briefs, the parties seem to place an undue emphasis on the question whether the "accounts" with the manufacturers and suppliers of the brokerage business in the form of oral and written contracts constituted "property" and, as such, could be transferred. The contract were terminable *115 on 30, 60, or 90-day notices. In some cases, the contracts were verbal and depended upon the custom of the trade. From this, petitioner argues 13 that "there was no good will to be transferred since there was no right which could be assigned" and the seller had no capital asset to sell. The petitioner thus contends that the overriding commissions paid to the seller constituted payments in consideration for services either rendered or to be rendered by the seller and were deductible under section 162. [3]
In our opinion, the parties have overlooked the real issue. In this case, the petitioner was buying a "going business." He purchased the fixed assets and took over the lease, as well as the name under which the seller conducted the business. The agreed commissions to be paid cannot be attributed either to any services required of the seller or to the covenant not to compete. The petitioner was buying a *116 going business and both the incidental services required of the seller and the covenant not to compete were intended to pass on to the petitioner the goodwill which was attributable to that business. 14 An argument similar to petitioner's was made by the taxpayer in Falstaff Beer, Inc. v. Commissioner, 322 F. 2d 744 (C.A. 5, 1963), affirming 37 T.C. 451 (1961) where it was contended that the sale of a beer distributorship could not have been the sale of goodwill because there was no tangible asset to which the goodwill could attach. Like the brokerage contract here, the distributorship contract could be terminated at will. Unlike the case before us, no "customer lists" (accounts) were acquired directly by the taxpayer in Falstaff. In rejecting the taxpayer's argument the Court of Appeals stated at 322 F. 2d 747: On the facts, as the Tax Court held, and as we view them, the taxpayer stepped into a going concern, built up from scratch * * * over the years. The taxpayer unquestionably received benefit from the relationships * * * which his predecessor had established. "The cost of good will in connection with the acquisition of the *117 assets of a going concern is a capital expenditure." Regs. § 1.263 (a)-2(h). See also Baxter v. Commissioner, 433 F. 2d 757 (C.A. 9, 1970), affirming a Memorandum Opinion of this Court. Regardless whether the contracts themselves constituted a transferable asset, Hollingsworth took over the brokerage accounts of the former Crowder Company as a part of the going business. Such relationships constitute one of the 15 basic elements of the "goodwill" of a business. See Manhattan Co. of Virginia, Inc., 50 T.C. 78 (1968); Thrifticheck Service Corporation, 33 T.C. 1038 (1960), affirmed 287 F. 2d (C.A. 2, 1961). Amounts expended for the purchase of the goodwill of a business, whether in a lump sum or measured by a percentage of sales, are not deductible. Baxter v. Commissioner, supra. The petitioner further argues that if the Court should hold that the payments in question were not deductible under section 162, a portion thereof should be allocated to and deducted on account of the covenant not to compete. In this case, the covenant extended for a period of only six months, or until the brokerage accounts which constituted *118 the goodwill of the business could be passed to the purchaser. Such a limitation on the right to compete is inherent in the sale of goodwill. Falstaff Beer, Inc. v. Commissioner, supra, and cases there cited. Accordingly, the respondent's determination with respect to the transaction between petitioner and Crowder must be sustained. Pursuant to the prior agreement of the parties, respondent's determination with respect to the Yancy transaction is therefore also sustained. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Gladys Hollingsworth is a petitioner herein solely by reason of having filed joint income tax returns with her husband. Hereinafter references to "petitioner" or "Hollingsworth" are to Shannon F. Hollingsworth. ↩
3. Section 162 provides, in pertinent part: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩