565 F.2d 1388
 78-1 USTC P 9200
 PALO ALTO TOWN & COUNTRY VILLAGE, INC., Town & Country
Construction Co., Inc., Ronald H. Williams and Ann
G. Williams, Plaintiffs-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Defendant-Appellee.
 No. 74-2585.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 19, 1977.
 
 1
 Julian N. Stern (argued), of Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for plaintiffs-appellants.
 
 
 2
 Dennis M. Donohue (argued), of Internal Revenue Service, Washington, D. C., for defendant-appellee.
 
 
 3
 Appeal from the United States Tax Court of the United States.
 
 
 4
 Before: CHAMBERS and GOODWIN, Circuit Judges, and SCHNACKE, District Judge.*
 
 SCHNACKE, District Judge:
 
 5
 This is an appeal by Palo Alto Town & Country Village, Inc. (hereinafter, "Palo Alto"); Ronald Williams, its president at the relevant times; and the latter's wife, Ann, from a Tax Court decision determining that Palo Alto owed $149,332.82 in income taxes for 1963-68 and that the Williamses owed $39,181.33 in income taxes for 1963-67.
 
 I. Cost Basis of Land
 
 6
 In 1959, the Williamses acquired two contiguous parcels of 9 and 42 acres, in several transactions. In the transaction here under scrutiny, the 9 acres and a 1/2 interest in the 42 acres were purchased at stated sales prices of $400,000 for the 9 acres and $200,000 for the 42 acres. The cost of acquisition of the remaining 1/2 interest in the 42 acres is agreed to have been some $415,000. The Williamses contend that the values were unintentionally reversed, and that the 9 acres were acquired for $200,000 and the 1/2 interest in the 42 acres for $400,000, so that when some 5 acres of the 42-acre parcel were sold, the basis should have been higher than the Commissioner allowed.
 
 
 7
 There is ample evidence to support the view that the agreements, knowingly and voluntarily made, with no suggestion of fraud, are binding on the Williamses. The tax consequence of such an agreement may be challenged by the Commissioner (Schulz v. C.I.R., 294 F.2d 52 (9th Cir., 1961)), but not by the taxpayer. (Baxter v. C.I.R., 433 F.2d 757 (9th Cir., 1970)).
 
 
 8
 The Tax Court's decision in this issue is affirmed.
 
 II. The Airplane
 
 9
 Commander Aviation, Inc. (hereinafter, "Commander") was owned by Ronald Williams and Williams' son and son-in-law. Williams and Palo Alto rented an airplane from Commander, and, as rental, paid an allocable part of Commander's expenses of operating the plane, based on the number of hours Palo Alto or Williams used it for business purposes. The Tax Court permitted the disallowance of these expenses and allowed them to deduct as an "ordinary and necessary" business expense, under 26 U.S.C. § 162(a), only $125 an hour for actual flying time, $125 an hour being the prevailing rate for chartering such a plane. It rejected any deduction for amounts above that, which were paid to operate the plane on a 24-hour standby basis.
 
 
 10
 An "ordinary" expense is one that is normally to be expected, in view of the circumstances facing the business, and a "necessary" expense is one that is appropriate and helpful to the business (see C.I.R. v. Heininger, 320 U.S. 467, 471, 64 S.Ct. 249, 88 L.Ed. 171 (1943)). The Tax Court conceded that the plane was useful in the operation of the business, for example, that it was instrumental in obtaining a number of tenants at Palo Alto's shopping centers, since it enabled Williams and other employees to visit several cities in one day for this purpose and return home, and permitted prospective tenants to visit the shopping centers and return to their places of business in a minimum amount of time. The Tax Court, though, said that the plane was not used often enough to justify maintaining it on a permanent standby basis. But the Tax Court didn't deny that on one occasion the immediate availability of the plane, arising from its standby status, led to a saving of almost $1,000,000 in interest on a loan, or that not having the plane on standby would result in delays in getting Palo Alto personnel back home from their business trips, or that chartering a plane and keeping it on standby would be much more expensive than taxpayers' standby arrangement.
 
 
 11
 In short, incurring the expense of maintaining Commander's plane on a standby basis was certainly appropriate and helpful to the business, and it was a response one would normally expect a business in taxpayers' circumstances to make. Thus, it was an "ordinary and necessary" business expense, and the Tax Court's contrary determination was clearly erroneous and will be set aside (see American Properties, Inc. v. C.I.R., 262 F.2d 150, 151 (9th Cir. 1958)). Taxpayers will be allowed to deduct the expense of maintaining the plane on a standby basis.
 
 III. Expense Deductions
 
 12
 The Tax Court affirmed the disallowance of a part of taxpayers' claimed expenses for promotion, entertainment and travel because taxpayers had failed to meet the substantiation requirements of § 274(d). However, only certain of the claimed expenses were subject to the requirements of § 274(d). That section became effective on January 1, 1963, but the Commissioner, by Revenue Ruling 63-144, 1963 2 CB 129, 130, ruled that the new rules would not be applied until after July 31, 1963, if a good faith effort was made to comply with the new substantive requirements. And § 274(d) does not cover local travel expense. 1963 1 CB 474, 475.
 
 
 13
 The disallowed expenses cover both local travel and items expended prior to July 31, 1963. Taxpayers' testimony that these expenses were incurred for business purposes was not contradicted. The Tax Court was entitled to disbelieve this testimony, but the record fails to show that it did, or that it was even considered, in the absence of what was apparently thought to be the essential substantiation. On remand, the Tax Court shall reconsider these expense deductions in the light of the limited applicability of § 274(d).
 
 IV. Constructive Dividend
 
 14
 The Tax Court erred in finding that the entire amount of the corporation's disallowed expenses automatically became constructive dividend to an owner of the corporation. The test for constructive dividends in such circumstances is two-fold; not only must the expenses be non-deductible to the corporation, but they must also represent some economic gain or benefit to the owner-taxpayer. (U. S. v. Gotcher, 401 F.2d 118, 121-124 (5th Cir. 1968)). No finding was made with respect to the latter element. Indeed, it is undisputed that many of the country club expenses were incurred by others than taxpayers. And other expenditures, while not properly supported corporate expenses, are not necessarily income to the taxpayers.
 
 
 15
 The mere fact that funds pass through the owner-taxpayers' hands is not alone determinative by the Tax Court's own decisions, e. g., Marks, TC Memo. 1963-304; Ashby, 50 TC 409. Some of the disallowed expenses seem clearly to have provided no economic benefit, or income, to taxpayer. To support its determination as to which do, the Tax Court must find appropriate facts in the record.
 
 
 16
 This matter is remanded to the Tax Court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation