LOUIS & LISA C. VILLA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Villa v. Commissioner
Docket No. 11803-78.
United States Tax Court
T.C. Memo 1980-305; 1980 Tax Ct. Memo LEXIS 279; 40 T.C.M. (CCH) 938; T.C.M. (RIA) 80305; August 11, 1980, Filed Louis Villa and Lisa C. Villa, pro se. Robert W. Towler, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency of $4,202 in petitioners' 1975 income tax and an addition to tax under section 6653(a) [1] of $210. At issue is the respondent's disallowance of an investment credit and a deduction for a rental loss and his inclusion in petitioners' income of interest in the amount of $1,305. [2]
*280 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Saratoga, Calif., at the time the petition herein was filed. Petitioners filed a timely joint Federal income tax return for the year 1975. On May 30, 1975, petitioners signed a document entitled "Lender Eligibility Letter" and "Understanding and Acceptance." The eligibility letter recited that the Gaudra Corporation (Gaudra) was in the business of buying and leasing of equipment, that it requested a "loan of funds," and that, "in order to provide some security as an inducement to the lender to lend funds" to it, Gaudra would execute "a promissory note" and "an assignment of a lease transaction." The understanding and acceptance read as follows: The UNDERSIGNED does hereby declare that the equipment leasing program as transacted by the Gaudra Corporation, has been fully explained to me, and I have been apprised of the risk involved and any remedial courses of action in the event of a Lessee's default. FURTHER, I HEREBY REPRESENT: A. I am experienced *281 in business and/or investments. B. By virtue of my own investment acumen, business experience or independent advice, I am capable of evaluating the hazards and merits of lending funds to this program. On that same date, petitioner Louis Villa signed a check, in the amount of $30,000, drawn on petitioners' joint account, payable to Gaudra. Prior to signing the lender eligibility letter, petitioners had read a document, captioned "Proposal," which also spoke in terms of leasing of equipment by Gaudra and the lending of funds to it for equipment to be leased (generally for a term of 60 months) upon the security of a "note" and "the assignment of a lease, equal to the loan." The proposal also contained the following provisions: As additional inducement, we will pass thru [sic] the tax advantages from the lease, such as: 1. The depreciation of the equipment including the bonus depreciation for the first year. Then using the declining balance for the rest of the term, includng the first year. 2. The investment tax credit, which is now 10%. It is hoped that the lender or proposed lender will be able to visualize the implication that the application of the depreciation *282 and the investment tax credit, will have on his or her tax liability along with the interest received on the loan, as related to the total income. It may even be possible, that the credits could negate the tax liability for not only this year but for past or future years, as well. The proposal included an example of the tax benefits which a lender allegedly could obtain. On June 16, 1975, Gaudra signed and delivered a promissory note to the petitioners for the sum of $30,000, bearing an annual interest rate of 9 percent. The note further provided in part: It is understood that these funds will be used in the leasing of equipment. AND for this promise, an assignment of the lease will be made to provide collateral security for the loan. HOWEVER, repayment of this loan is subject to the normal risks of lending and payment by the LESSEE. However, certain legal measures are contained within the agreement to lease by and between the Lessee and Lessor, to minimize any default and for the protection of the Lessor and the holder of this note. As additional consideration for this note, the Gaudra Corporation will relinquish any and all rights to any areas of possible tax considerations, *283 that may provide an advantage to the holder of this note, in connection with said lease stated above, as being assigned.
On July 18, 1975, Gaudra signed and delivered a document assigning to petitioners 54.54 percent of Lease A 103 and providing in part: The ASSIGNMENT is made as security for all indebtedness, obligations and liabilities of the undersigned to said bank or investor now, or hereafter existing, matured or to mature, absolute or contingent, and howsoever created, evidenced or secured. The words "first payment due July 18, 1975 for $622.80 and $622.80 each and every month thereafter for 59 months" were typed at the bottom of this document beside the signatures. The subject matter of Lease A 103 was various items of dental equipment. The lessee was a dentist unrelated to, and unknown to, petitioners. Petitioners also did not know who supplied the funds for purchase of the equipment to the extent that its cost exceeded $30,000. Petitioners received six payments of $622.80 each in 1975 on the promissory note, a total of $3,736.80. Part of each payment was interest and part was repayment of principal. On their 1975 income tax return, petitioners claimed an *284 investment credit of $3,000 and depreciation of $6,177, based on an investment of $30,000 in equipment having a useful life of seven years. They reported gross rental income from dental equipment of $3,759 [3] and, because of the claimed depreciation, a net rental loss of $2,418. Respondent disallowed the investment credit and the deduction for rental loss. He further determined that the portion of the total payments received which represented interest was $1,305 and was includable in petitioners' income. OPINION The issues for decision are whether petitioners are entitled to an investment credit and to a deduction for a rental loss in connection with the payment to Gaudra of $30,000, which was used for the purchase of dental office equipment, and whether petitioners received interest income as a result of this transaction. All three issues are interrelated and turn on the proper characterization of the transaction. Petitioners contend that they advanced the $30,000 to Gaudra to be *285 partners (either with Gaudra or with unknown third parties) in an investment in the equipment. Respondent, on the other hand, takes the position that the $30,000 represented a loan to Gaudra and that petitioners had no capital investment in the dental equipment; rather, they had only a security interest in the lease under which the equipment purchased by Gaudra was leased to a third party. Petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
All the documents which are the written components of the agreement between petitioners and the Gaudra Corporation support the respondent's position. These documents -- the lender eligiblity letter and the understanding and acceptance signed by petitioners and the promissory note and assignment of a lease transaction signed by Gaudra -- refer to a loan to Gaudra and the assignment of an interest in the lease as security for such indebtedness. None of the documents gives any indication that Gaudra was an agent or a conduit for an investment by petitioners in equipment or that petitioners were entering into a partnership agreement for the investment *286 of funds in dental equipment. [4]
Apart from petitioner Louis Villa's testimony, the only suggestion in the record that the transaction was not a loan is the description in the proposal, read by petitioners prior to signing the lender eligibility letter and understanding and acceptance, of the tax consequences which would result from the agreement and the allusion to this description in the promissory note, which states that Gaudra "will relinquish any and all rights to any areas of possible tax considerations, that may provide an advantage to the holder of this note." This Court has applied a rule that "strong proof" must be adduced by a taxpayer if he seeks to establish a position at variance with the language of a written agreement to which he was a party. Schulz v. Commissioner,294 F.2d 52, 55 (9th Cir. 1961), *287 affg. 34 T.C. 235 (1960); Spector v. Commissioner,71 T.C. 1017, 1023 (1979), on appeal (5th Cir., Oct. 3, 1979); Schmitz v. Commissioner,51 T.C. 306, 318 (1968), affd. sub nom. Throndson v. Commissioner,457 F.2d 1022 (9th Cir. 1972). If the agreement has some "independent basis in fact or some arguable relationship with business reality," the taxpayer will be bound by the tax consequences apparent on the face of the agreement. Schulz v. Commissioner,294 F.2d at 55; Spector v. Commissioner,supra at 1023.See also Buffalo Tool and Die Mfg. Co. v. Commissioner, 74 T.C.     (May 27, 1980), and cases discussed therein. The Ninth Circuit, to which an appeal in this case would lie, has indicated that it might apply an even more stringent standard, namely, precluding a party from challenging the tax consequences of the agreement in the absence of fraud, in cases where respondent is willing to permit the agreement to govern such consequences. Palo Alto Town & Country Village, Inc. v. Commissioner,565 F.2d 1388, 1390 (9th Cir. 1977), affg. in part and revg. *288 in part a Memorandum Opinion of this Court; Baxter v. Commissioner,433 F.2d 757, 759 (9th Cir. 1970), affg. a Memorandum Opinion of this Court. [5]
In the case before us, the application of either standard leads us to the same conclusion. We do not find petitioner Louis Villa's self-serving testimony, together with the indications that petitioners were misadvised as to the tax *289 implications of their transaction, sufficient to constitute strong proof that the substance of that transaction was other than that set forth in the documents which comprise the written agreement. Cf. Hamlin's Trust v. Commissioner,209 F.2d 761, 765 (10th Cir. 1954), affg. 19 T.C. 718 (1953). In this connection, we note that petitioners failed to call as a witness a representative of Gaudra to testify as to the substance of the transaction. We infer that such testimony would not have been favorable to them. Stoumen v. Commissioner,208 F.2d 903, 907 (3d Cir. 1953), affg. a Memorandum Opinion of this Court; Bresler v. Commissioner,65 T.C. 182, 188 (1975); Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). We conclude that petitioners have failed to carry their burden of proof that the transaction between petitioners and Gaudra did not constitute a loan. The rental loss claimed by petitioners arose from depreciation with respect to the rental equipment in excess of reported gross rental income. A taxpayer is entitled to the *290 depreciation deduction provided by section 167 with respect to an asset only if he has made a capital investment in such asset. Miller v. Commissioner,68 T.C. 767, 775 (1977), and cases cited thereat. We have found that petitioners were merely lenders of the funds with which the equipment was purchased. They made no capital investment in the equipment itself, their interest being limited to a security interest in a lease of the equipment. They were not the party bearing the loss from exhaustion and wear and tear of the equipment. They are, therefore, not entitled to a depreciation deduction with respect to such equipment. [6]
Since petitioners are not entitled to depreciation, they are not entitled to an investment credit. The statute requires a "qualified investment" in "section 38 property." Section 46(a) and (c)."Section 38 property" is defined to include only property having a useful life of three years or more, with respect to which depreciation is allowable. Section 48(a)(1)(E). Finally, petitioners reported the entire amount received under the terms of Gaudra's promissory *291 note (with a slight discrepancy, see n. 3, supra) as gross rental income. Respondent contends that only a portion of the total amount is taxable as interest income and that the remainder represents repayment of principal and is nontaxable. Respondent's treatment of the payments as interest and repayment of principal comports with our characterization of the transaction as a loan and with the terms of the promissory note issued by Gaudra pursuant to petitioners' agreement. Petitioners did not challenge respondent's allocation of the payments between interest and repayment of principal. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue, unless otherwise indicated. ↩
2. At trial, respondent conceded the issue of the addition to tax and made a partial concession as to another issue relating to a claimed sick-pay exclusion, which he has now conceded in its entirety on brief.↩
3. There is no explanation in the record for the discrepancy between the $3,759 gross rental income reported and the sum of the six monthly payments of $622.80 which petitioners received.↩
4. We do not think that the provision in the promissory note that "repayment of this loan is subject to the normal risks of lending and payment by the lessee" indicates any more than that repayment of a debt is dependent on the continuing financial viability of the obligor, which, in this case, may have depended on the lessee's fulfillment of his obligations.↩
5. The position of the Ninth Circuit seems to come close to adopting the rule of Commissioner v. Danielson,378 F.2d 771 (3d Cir. 1967), revg. and remanding 44 T.C. 549 (1965). However, the point was expressly left open in Throndson v. Commissioner,457 F.2d 1022, 1025 (9th Cir. 1972), affg. 51 T.C. 306 (1968), and neither Throndson nor Danielson was cited in Palo Alto Town & Country Village, Inc. v. Commissioner,565 F.2d 1388 (9th Cir. 1977), nor was Danielson cited in Baxter v. Commissioner,433 F.2d 757 (9th Cir. 1970). This Court has not adopted the Danielson rule. See Buffalo Tool and Die Mfg. Co. v. Commissioner,↩ 74 T.C.     (May 27, 1980), slip op. p. 9, n. 9.
6. See also Achille v. Commissioner,T.C. Memo. 1979-268↩.