T.C. Memo. 1996-183

UNITED STATES TAX COURT

DONALD L. CHIAPPETTI, AND MARY K. CHIAPPETTI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12534-94.                    Filed April 16, 1996.

Robert Ong Hing and Gregory Ong Hing, for petitioners.

Ann M. Welhaf, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined the following defi-
ciencies in petitioners' Federal income tax:

| Year | Deficiency |
|------|------------|
| 1990 | $4,793 |
| 1991 | 9,618 |

The sole issue for decision is whether petitioners had gross

income of $14,522 and $38,248 for 1990 and 1991, respectively, attributable to a certain covenant not to compete.  We hold that they did.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners resided in Scottsdale, Arizona, at the time the petition was filed.

From approximately 1982 through 1988, petitioner Donald L. Chiappetti (petitioner) practiced dentistry as an employee of his wholly owned corporation, Chiappetti Professional Corporation (CPC).

Pursuant to a written purchase contract dated December 31, 1988 (purchase contract), CPC sold certain of its assets to petitioner's son, Donald C. Chiappetti, a dentist.  The purchase contract defined CPC as the "Seller" and Donald C. Chiappetti as the "Buyer".[1]  Section 1 of the purchase contract provided that "Seller agrees to sell and Buyer agrees to buy * * * only those items described in Exhibit A attached hereto and incorporated herein".  Exhibit A attached to the purchase contract identified the "Dental Practice Assets to be purchased by Donald Craig Chiappetti from Chiappetti Professional Corporation".  That exhibit and section 4 of the purchase contract allocated the

---

[1]  Although the purchase contract defined Donald C. Chiappetti as the "Buyer", certain sections of that contract refer to him as the "Purchaser".

purchase price to be paid by Donald C. Chiappetti under the purchase contract to various items, including an item referred to in that exhibit as a "Covenant Not to Compete executed by Dr. Donald L. Chiappetti" and an item referred to in that section as a "Covenant Not to Compete".

The purchase contract contained the following language with respect to a covenant not to compete:

> Section 7.  Covenant Not to Compete.  In connection with the sale of the above-mentioned assets, Donald L. Chiappetti (the sole shareholder of Seller) agrees that he will not, for a period of five (5) years from the date of closing, engage in the practice of general dentistry within a ten (10) mile radius of the office located at 7125 E. Lincoln Drive, Scottsdale, Arizona 85253.  Donald L. Chiappetti agrees to honor the spirit of this covenant and specifically agrees not to solicit patients treated at said location in the event he practices elsewhere in the future.
>
> Purchaser agrees that, in the event of a default by him on any Promissory Note to Seller, that [sic] Purchaser will not engage in the practice of general dentistry within a radius of ten (10) miles from the above referenced location for a period of five (5) years from the date of default.  Purchaser further agrees that, in the event of such default, any Covenant Not to Compete that has been provided by Donald L. Chiappetti will be of no further force and effect.

Although petitioner signed the purchase contract on behalf of CPC as its "President", because Donald C. Chiappetti wanted petitioner to execute the above-quoted covenant not to compete in his individual capacity, that covenant was executed by "Donald L. Chiappetti, Individually".  (We shall refer to the covenant not to compete that is contained in section 7 of the purchase con-

tract as the covenant not to compete, and all references to the purchase contract are to all provisions (including the covenant not to compete) contained in, and exhibits attached to, that contract.)  The covenant not to compete contained in section 7 of the purchase contract was valid and enforceable.

The purchase contract contained the following language with respect to an option to repurchase (option to repurchase):

> Section 17.  Option to Repurchase.  Seller, not being entirely sure that he wants to retire from the practice of dentistry, shall have the option of repur- chasing the assets described in Section 1, for an amount equal to $135,000 minus any liens or encumbran- ces on said assets and upon the same terms and condi- tions in this Contract except for the Purchase Price (i.e. Donald Craig Chiappetti will become the "Seller" and Chiappetti P.C. will become the "Buyer").  The purchase price under Seller's Option to Repurchase shall be payable in equal monthly installments over five years at 10% interest or may be paid, at Seller's option, totally in cash upon closing or paid over a period [sic] less than five years in equal monthly in- stallments at 10% interest.  Seller may repurchase said assets after giving Buyer 30 days written notice there- of.  In the event of such repurchase, Donald L. Chiap- petti shall no longer be subject to the Covenant Not to Compete, and instead Buyer shall be substituted for Donald L. Chiappetti in the Covenant Not to Compete. Seller's option to repurchase the assets shall expire on December 31, 1993, if notice of intention to exer- cise said option has not been given by this date.

The following phrase contained in the option to repurchase refers to petitioner in his individual capacity, and not to CPC:  "not being entirely sure that he wants to retire".  (Emphasis added.)

The purchase contract provided that Donald C. Chiappetti was to pay CPC a total purchase price of $125,000.  Exhibit A at-

tached to the purchase contract allocated the $125,000 purchase price that Donald C. Chiappetti was to pay for the items that he was acquiring thereunder, as follows:

| | |
|---|---:|
| Goodwill | $5,000 |
| Supplies | 5,000 |
| Group assets | 4,000 |
| Office furnishings and equipment | 6,000 |
| Dental equipment | 24,000 |
| All patient and office records belonging to CPC | 5,000 |
| Covenant Not to Compete executed by Dr. Donald L. Chiappetti | 76,000 |
| Total | 125,000 |

Section 4 of the purchase contract made an identical allocation of the $125,000 purchase price, except that it allocated (1) $5,000 to an item referred to as "Patient Records", instead of "All patient and office records belonging to CPC" and (2) $76,000 to an item referred to as a "Covenant Not to Compete", instead of a "Covenant Not to Compete executed by Dr. Donald L. Chiappetti".

The covenant not to compete contained in section 7 of the purchase contract was accurately valued in the purchase contract at $76,000.

The purchase contract provided that the $125,000 purchase price was payable as follows:  (1) $1,000 payable at closing and (2) $124,000 payable in 60 equal monthly installments to be evidenced by a promissory note for that amount.  Contemporaneous with the execution by petitioner of the purchase contract in his capacity as president of CPC and of the covenant not to compete

in his individual capacity, Donald C. Chiappetti signed a promissory note for $124,000 payable to CPC (promissory note).  Donald C. Chiappetti paid all amounts due under that promissory note.

Petitioner, who was then 55 years old, retired from the practice of dentistry upon execution by him, of (1) the purchase contract in his capacity as president of CPC and (2) the covenant not to compete in his individual capacity.

In its Federal income tax returns (returns) for 1990 and 1991, CPC reported income of $14,522 and $38,248, respectively, attributable to the covenant not to compete.  CPC's income for both 1990 and 1991 was offset by deductions CPC took in its respective returns for those years, including net operating loss carryforwards.  As a result, CPC had no income tax liability for 1990 or 1991.

## OPINION

Petitioners bear the burden of proving that respondent's determinations in the notice of deficiency (notice) are erroneous.  Rule 142(a);[2] Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners attempted to satisfy their burden through testimonial and documentary evidence.[3]

---

[2]  All Rule references are to the Tax Court Rules of Practice and Procedure.

[3]  At trial, we conditionally admitted into evidence certain stipulated exhibits to which respondent objected on grounds of relevance (viz., Exhibits 8, 10, and 11).  Although we shall

(continued...)

The only witnesses were petitioner and his son, Donald C. Chiappetti.  Petitioner's testimony was self-serving and conflicted with certain provisions in the purchase contract that are directly apposite to the issue in this case.  Similarly, Donald C. Chiappetti's testimony served the interests of his father and conflicted with those same provisions in the purchase contract. Under such circumstances, we are not required to, and we generally do not, rely on their testimony to sustain petitioners' burden of proving error in respondent's determinations.  See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

In the notice, respondent determined that the amounts paid during the years at issue by Donald C. Chiappetti to CPC that were attributable to the covenant not to compete represented income to petitioner.  It is well settled that consideration paid for a bona fide covenant not to compete is income to the seller. Sonnleitner v. Commissioner, 598 F.2d 464, 466 (5th Cir. 1979),

---

[3](...continued)
unconditionally admit those exhibits into evidence as relevant, we note that petitioners do not rely on them on brief, and we did not find them helpful and thus did not rely on them in reaching our holding herein.

affg. T.C. Memo. 1976-249; Montesi v. Commissioner, 340 F.2d 97, 100 (6th Cir. 1965), affg. 40 T.C. 511 (1963); Hamlin's Trust v. Commissioner, 209 F.2d 761, 765 (10th Cir. 1954), affg. 19 T.C. 718 (1953); see Yandell v. United States, 315 F.2d 141, 142-143 (9th Cir. 1963) (per curiam). "Money paid as consideration for a covenant not to compete is regarded as income received in place of that which the taxpayer might otherwise have earned in the field of enterprise from which the covenant excludes him [or her]." Montesi v. Commissioner, supra.

As we understand petitioners' principal position, they argue that CPC, and not petitioner, entered into the covenant not to compete for which Donald C. Chiappetti paid $76,000 because that covenant was binding on CPC and therefore obligated CPC, and not petitioner, to refrain from practicing dentistry and from soliciting its patient base, which petitioners describe as CPC's most important asset, as provided in that covenant. Respondent contends that the income from the covenant not to compete is attributable to petitioner because (1) that covenant obligates petitioner in his individual capacity, and not CPC, to refrain from practicing dentistry and from soliciting patients as provided therein, and (2) he cannot escape tax on that income by assigning it to his wholly owned corporation. We agree with respondent.

We find nothing in the covenant not to compete or in any

other portion of the purchase contract that expressly or impliedly supports petitioners' argument that CPC was bound by that covenant to refrain from practicing dentistry and from soliciting its patient base as provided therein. The covenant not to compete specifically and unambiguously referred to Donald L. Chiappetti, petitioner herein, and obligated him, and not CPC, to refrain from engaging in the practice of dentistry and from soliciting patients as provided therein. It also provided that in the event the buyer Donald C. Chiappetti were to default under the purchase contract, that covenant "that has been provided by Donald L. Chiappetti" would no longer be in effect.[4] Neither the covenant not to compete nor any other provision in the purchase contract provided that CPC would be released from the covenant not to compete in the event that the buyer Donald C. Chiappetti were to default under the purchase contract. Although petitioner

---

[4] The terms of the covenant not to compete could not be more clear when they provided in pertinent part that:

> Donald L. Chiappetti (the sole shareholder of Seller) agrees that he will not, for a period of five (5) years from the date of closing, engage in the practice of general dentistry within a ten (10) mile radius of the office located at 7125 E. Lincoln Drive, Scottsdale, Arizona 85253. Donald L. Chiappetti agrees to honor the spirit of this covenant and specifically agrees not to solicit patients treated at said location in the event he practices elsewhere in the future.

> * * * Purchaser further agrees that, in the event of such default, any Covenant Not to Compete that has been provided by Donald L. Chiappetti will be of no further force and effect. [Emphasis added.]

executed the purchase contract on behalf of CPC as its president, at the insistence of the buyer Donald C. Chiappetti, petitioner Donald L. Chiappetti executed the covenant not to compete in his individual capacity.

Other provisions in the purchase contract also undermine petitioners' principal position herein. Thus, the purchase contract provided in section 17 that if the option to repurchase the items described in section 1 thereof were exercised, "Donald L. Chiappetti shall no longer be subject to the Covenant Not to Compete".[5] Neither the covenant not to compete nor any other provision in the purchase contract provided that CPC would be released from the covenant not to compete in the event that CPC were to exercise the option to repurchase.

It is also significant that exhibit A attached to the purchase contract that allocated the $125,000 purchase price that Donald C. Chiappetti was to pay for the items he was acquiring

---

[5] We acknowledge that the following phrase contained in the option to repurchase may at first blush appear to be confusing: "Seller, not being entirely sure that he wants to retire from the practice of dentistry, shall have the option of repurchasing the assets described in Section 1". We have found that the phrase "not being entirely sure that he wants to retire" (emphasis added) is a reference to petitioner in his individual capacity. However, the option to repurchase provides that the seller, i.e., CPC (not petitioner), was entitled to repurchase the assets sold pursuant to that contract, including the covenant not to compete. In any event, what is significant to us in resolving the issue herein is that the option to repurchase specifically and unambiguously releases petitioner, and not CPC, from the covenant not to compete in the event that that option were exercised.

thereunder specifically allocated $76,000 of the purchase price paid by Donald C. Chiappetti to the "Covenant Not to Compete executed by Dr. Donald L. Chiappetti" (emphasis added), that is to say, to the agreement of petitioner, and not CPC, to refrain from practicing dentistry and from soliciting its patients as provided therein. Neither that exhibit nor any other provision in the purchase contract allocated $76,000 (or any other portion of the purchase price) to what petitioners' claim was CPC's obligation to refrain from soliciting its patient base. In fact, there is no reference whatsoever in the purchase contract to an item called a "patient base" of CPC.[6]

Petitioners also argue that, because the $125,000 that Donald C. Chiappetti paid under the purchase contract, including the $76,000 that was allocated by that contract to the covenant not to compete, was paid to CPC, and not to petitioner, the covenant not to compete was an asset of CPC. We disagree. Regardless who received the income attributable to the covenant not to compete, the true earner of that income is liable for the tax on it and cannot escape that tax by assigning the income to another taxpayer. See Lucas v. Earl, 281 U.S. 111 (1930). In the instant case, petitioner in his individual capacity, and not

_____

[6]  We note that sec. 4 of the purchase contract and exhibit A attached thereto allocated $5,000 of the $125,000 purchase price to an item described as "Goodwill" and $5,000 to an item described as "Patient Records" in sec. 4 and as "All patient and office records belonging to CPC" in exhibit A.

CPC, agreed to refrain from practicing dentistry and from solic-iting patients as provided in the covenant not to compete. Consequently, we find that petitioner, and not CPC, must recog-nize the income that Donald C. Chiappetti paid for petitioner's agreement to so refrain, even though he may have paid it to CPC.

Petitioners further argue that, because exhibit A attached to the purchase contract that allocated the $125,000 purchase price to various items acquired thereunder referred to the cove-nant not to compete as an asset of CPC, the $76,000 that Donald C. Chiappetti paid to purchase that covenant is income to CPC from the sale of that asset. Petitioners' argument is without merit. Regardless whether the purchase contract referred to the covenant not to compete as an asset of CPC, it was petitioner, and not CPC, who promised to refrain from practicing dentistry and from soliciting patients as specified in that covenant. Consequently, petitioner, and not CPC, must recognize the income attributable to that promise. See Montesi v. Commissioner, 340 F.2d at 99-100.

Petitioners also contend that if petitioner, and not CPC, had been the person obligated by the covenant not to compete, that covenant would have had little or no value, since petitioner intended to, and did, retire from the practice of dentistry at the time the purchase contract was executed. Therefore, accord-ing to petitioners, in order for that covenant to have been

accurately valued at $76,000, CPC, and not petitioner, must have promised not to compete. Petitioners' contention that the covenant not to compete had little or no value flies in the face of the parties' stipulation that "the $76,000 value placed upon the covenant not to compete in the purchase contract was an accurate value of the covenant." On the present record, petitioners have failed to show why they should be relieved of that stipulation. See Rule 91(e). As for their contention that petitioner's intention to retire and his actual retirement at the time the purchase contract was executed would have made any agreement by him not to compete of little or no value, petitioners have failed to prove that petitioner was certain that he wanted to retire or that he would remain retired. In fact, the option to repurchase contained in the purchase contract recited that petitioner was "not * * * entirely sure" that he wanted to retire. Petitioner also testified that it was his son, Donald C. Chiappetti, who insisted that petitioner execute the covenant not to compete in his individual capacity, presumably because of his son's concern about future competition from his father. Based on the instant record, we have no basis for finding that the covenant not to compete, which by its terms binds only petitioner, and not CPC, should have been valued at some amount other than the $76,000 that petitioner, CPC, and Donald C. Chiappetti allocated to it in the

purchase contract.[7]

We acknowledge that the purchase contract contains certain facially inconsistent provisions in that section 1 thereof provided that CPC agreed to sell the items described in exhibit A attached to the contract, whereas exhibit A identified as one of the items that CPC was purportedly agreeing to sell the "Covenant Not to Compete executed by Dr. Donald L. Chiappetti".  However, any such inconsistency is readily resolved by turning to the provision in the purchase contract that is the operative provision with respect to the covenant not to compete, viz., section 7 of the purchase contract.  In that section, petitioner, and not CPC, agreed to refrain from practicing dentistry and from soliciting patients as provided therein, and, at the insistence of the buyer, petitioner executed the covenant not to compete in his individual capacity.  There is nothing ambiguous or equivocal in the covenant not to compete contained in section 7 of the purchase contract.  It is unambiguous and unequivocal in obligating

_____

[7]  Petitioner argues that, at the very least, the majority of the $76,000 allocated in the purchase contract to the covenant not to compete should be attributed to CPC's promise to refrain from practicing dentistry and from soliciting patients as provided in that covenant, rather than to petitioner's promise to refrain from doing so.  We are unwilling to attribute any amount of the $76,000 to CPC's alleged promise to refrain from doing those things because we find on the instant record that petitioners failed to prove that CPC promised to refrain from so doing or that any portion of the $76,000 allocated in the purchase contract to the covenant not to compete executed by petitioner in his individual capacity was attributable to a promise by CPC to refrain from doing so.

petitioner, and not CPC, to comply with its terms.  Other provisions in the purchase contract also unambiguously and unequivocally referred to the obligation of petitioner, and not CPC, to comply with the covenant not to compete contained in section 7 thereof and allocated $76,000 of the total price Donald C. Chiappetti paid under the purchase contract to the covenant not to compete "executed by Dr. Donald L. Chiappetti".

This Court applies the so-called strong proof rule when a taxpayer asserts that an allocation of consideration is other than that specified in a written contract; that is to say, the taxpayer must present strong proof, i.e., more than a preponderance of the evidence, that his or her alleged allocation is correct based on the intent of the persons who were the parties to that contract and the economic realities.[8]  See, e.g.,

---

[8]  Respondent argues that, pursuant to Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965) (the Danielson rule), petitioner is bound for tax purposes by the covenant not to compete that he executed because it was a valid, enforceable contract and he has not made a showing of mistake, undue influence, fraud, or duress with respect to that covenant.  As this Court has previously stated, we do not apply the Danielson rule unless the Court of Appeals to which the case would normally be appealed has adopted that rule.  Elrod v. Commissioner, 87 T.C. 1046, 1065-1066 (1986).  Although the U.S. Court of Appeals for the Ninth Circuit to which an appeal in this case would normally lie has not adopted the Danielson rule, that Court has held that, where there is ample evidence to support a finding that an agreement, knowingly and voluntarily made, with no suggestion of fraud, is binding on a taxpayer, "The tax consequence of such an agreement may be challenged by the Commissioner, but not by the taxpayer."  (Citations omitted.)  Palo Alto Town & Country Village, Inc. v. Commissioner, 565 F.2d 1388,

(continued...)

Meredith Corp. v. Commissioner, 102 T.C. 406, 438 (1994); Estate of Durkin v. Commissioner, 99 T.C. 561, 572-573 (1992), supplementing T.C. Memo. 1992-325; Elrod v. Commissioner, 87 T.C. 1046, 1065-1066 (1986); Peterson Machine Tool, Inc. v. Commissioner, 79 T.C. 72, 81-82 (1982), affd. 54 AFTR 2d 84-5407, 84-2 USTC par. 9885 (10th Cir. 1984). The U.S. Court of Appeals for the Ninth Circuit affirmed our use of the strong proof rule in Schulz v. Commissioner, 294 F.2d 52, 55 (9th Cir. 1961), affg. 34 T.C. 235 (1960). See also Salyer Grain & Milling Co. v. Commissioner, T.C. Memo. 1986-165, affd. without opinion 815 F.2d 1265 (9th Cir. 1987).

Petitioners have failed to present strong proof that CPC, and not petitioner in his individual capacity, was obligated by the covenant not to compete contained in section 7 of the purchase contract. We are unwilling to accept the testimony of petitioner and his son as strong proof that they did not intend that section to mean what it says or that they did not intend to allocate $76,000 of the total purchase price that his son was to pay under the purchase contract to the "Covenant Not to Compete

_____

[8](...continued)
1390 (9th Cir. 1977), remanding T.C. Memo. 1973-223; see Baxter v. Commissioner, 433 F.2d 757, 759 (9th Cir. 1970), affg. T.C. Memo. 1969-87. Regardless whether we were to apply the standard set forth in the Palo Alto Town & Country Village case, the strong proof rule that we generally apply, the Danielson rule, or even a preponderance of the evidence standard, our holding herein would remain the same.

executed by Dr. Donald L. Chiappetti", as they clearly did in exhibit A to that contract.

Based on our examination of the entire record before us, we find that petitioners have failed to sustain their burden of proving error in respondent's determinations that they must recognize income of $14,522 and $38,248 for 1990 and 1991, respectively, that is attributable to petitioner's covenant not to compete.[9]  We therefore sustain those determinations.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[9]  We have considered all of petitioners' other arguments not discussed herein and also find them to be without merit.