JOHN J. BALLARD and PATRICIA BALLARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ballard v. Commissioner
Docket No. 12932-83.
United States Tax Court
T.C. Memo 1984-662; 1984 Tax Ct. Memo LEXIS 15; 49 T.C.M. (CCH) 357; T.C.M. (RIA) 84662; December 20, 1984. James E. Wollrab, for the petitioners. James A. Kutten, for the respondent. GOFFE MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax for the taxable years 1977, 1978, and 1979 in the amounts of $5,563.33, $3,039.86, and $4,437.70, respectively. After concessions, the only issue remaining for decision is whether the expenses of owning, operating, and maintaining an airplane are deductible by petitioners under section 212. [1]
*16 FINDINGS OF FACT A majority of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. John J. Ballard (Mr. Ballard) and Patricia Ballard (Mrs. Ballard), husband and wife, were residents of Marathon, Florida, at the time the petition in this case was filed, but resided in Florissant, Missouri, a suburb of St. Louis, Missouri, during the taxable years 1977, 1978, and 1979. Petitioners timely filed joint Federal income tax returns for the taxable years 1977, 1978, and 1979 with the Internal Revenue Service Center at Kansas City, Missouri. Petitioners owned and managed several apartment buildings in order to obtain rental income and capital appreciation during the years at issue: Date
Acquired
Location
Type of Units
[2] 1971 1109 and 1111 Sombrero Boulevard
Duplex
Marathon, Florida
1976
Chambers Apartments
8 2-bedroom;
St. Louis, Missouri
8 1-bedroom
1976
9217 and 9219 Bobb Avenue
Duplex
St. Louis, Missouri
1978
North River Apartments
Apartments
St. Louis, Missouri
Mrs. Ballard personally managed the apartment buildings in St. Louis. During *17 the years at issue, petitioners hired Brantner Realty Company, Marathon, Florida, to manage their duplex in Marathon and to locate tenants. None of petitioners' records, however, indicate that Brantner Realty Company was paid for these services during the taxable years at issue. Petitioners also hired an engineer who was familiar with building permit and construction moratorium procedures to represent them before the Marathon Building Commission. Mr. Ballard actively managed the Marathon property during the taxable years at issue. The gross rental income and expenses from the duplex in Marathon, Florida, itemized on petitioners' joint Federal income tax returns for the taxable years 1977, 1978, and 1979 are as follows: 1977
1978
1979
Gross rental income
$3,600.00
$5,400.00
$5,400.00
Expenses
11,134.00
11,435.77
10,475.62
Petitioners paid these expenses during the taxable years for which the expenses were deducted. *18 During the taxable years 1977, 1978, and 1979, Mr. Ballard traveled regularly from petitioners' residence in St. Louis to Marathon, Florida, and back. Mrs. Ballard did not accompany him because of her responsibilities in the management of the St. Louis properties. The duration of each trip was generally between 24 and 48 hours. During the years at issue, Mr. Ballard was a commercial pilot for Ozark Air Lines. As Mr. Ballard worked in the airline industry, he could fly on any domestic carrier at a reduced rate in accordance with the "interline agreement" between the other carrier and his employer, Ozark Air Lines. An "interline agreement" is an agreement each domestic airline has with other domestic airlines setting forth their reciprocal reduced flying rate for their employees. Under this interline agreement, Mr. Ballard could generally fly round-trip from St. Louis, Missouri, to Miami, Florida, for $40 on either Ozark Air Lines, Trans World Air Lines, or Eastern Air Lines. Under this agreement, Mr. Ballard could also generally fly round-trip between Miami, Florida, and Marathon, Florida, for $27 on either Air Sunshine or Air Florida. An airline industry employee *19 who is flying under the "interline agreement" must fly standby, and may board only after all other standby passengers. Mr. Ballard could have flown as a regular ticketed passenger by reserving in advance at a cost of approximately three times the standby fare. Mr. Ballard bought tickets under the interline agreement for approximately 12, 9, and 6 round-trips by commercial airline between St. Louis and Miami in the taxable years 1977, 1978, and 1979, respectively. Sometimes he flew on to Marathon. At other times he rented a car and drove from Miami to Marathon.Mr. Ballard did not lease a plane for any of these trips, as the cost of leasing (approximately $175 per hour) was thought to be prohibitive. [3]
Mr. Ballard also traveled between St. Louis and Marathon, Florida, in a 1956 Cessna 310, a small twin-engine airplane, purchased by petitioners in May 1976 for the amount of $17,450. The number of round-trips for the taxable years 1977, 1978, and 1979 were six, seven and three, respectively.Mr. Ballard used the airplane *20 exclusively for these trips and test flights. Mr. Ballard did not fly the airplane for pleasure. One hundred percent of the costs of owning, operating, and maintaining the airplane were claimed as deductions under section 212 on petitioners' returns for the taxable years 1977, 1978, and 1979, as follows: 1977
1978
1979
Operation and maintenance
$3,145.00
$2,940.36
[4] $7,775.84
Depreciation
3,286.00
2,580.00
2,026.94
Total expenses
6,431.00
5,520.36
9,782.78
Petitioners paid these expenses during the taxable years for which the deductions were claimed. Mr. Ballard's trips to Marathon, Florida, in petitioners' airplane and by commercial airline, accomplished various purposes over the period between the taxable year *21 1969 and the end of taxable year 1979. The contractor filed for bankruptcy during the construction of the duplex in the taxable year 1973, requiring petitioners to take successful legal action against him. Petitioners extended a seawall to protect the Marathon property during this period. A building moratorium in 1973 resulted in extended discussions with the Marathon Building Commission. Finally, petitioners found it necessary to personally and regularly arrange for or supervise various repairs and maintenance projects at the property. On March 2, 1983, and within the statutory period of limitations, the Commissioner issued a statutory notice of deficiency to petitioners for the taxable years 1977, 1978, and 1979. The Commissioner disallowed portions of the claimed rental expenses for petitioners' properties and all of the airplane expenses and depreciation in the amounts of $12,274.66, $6,620.06, and $11,746.78 for the taxable years 1977, 1978, and 1979. He determined that certain rental expenses were not substantiated, and that the expenses of owning, operating, and maintaining an airplane for these years were not deductible as ordinary, necessary, and reasonable *22 business expenses under section 212. Respondent has subsequently conceded that all of the claimed rental expenses were paid and are deductible by petitioners. Rental expense deductions in the amounts of $5,843.66, $1,099.70, and $1,964 for the taxable years 1977, 1978, and 1979, respectively, are, therefore, allowed.[5]
OPINION After concessions, the only issue remaining for decision is whether the expenses of owning, operating, and maintaining an airplane are deductible by petitioners under section 212. The Commissioner's determinations are presumptively correct and petitioners bear the burden of proving their entitlement to the deductions they *23 claim. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent contends that the airplane expenses and depreciation substantially exceed the gross rental income generated by petitioners' duplex in Marathon before even considering the other expenses associated with the property. Further, respondent argues that a comparison of the income and expenses clearly demonstrates that the privately owned plane had no reasonable and proximate relationship to the production of income. Finally, respondent argues that the expenses far exceeded the cost of available commercial flights. Petitioner contends that the expenses of owning, operating, and maintaining the airplane are ordinary, necessary, and reasonable within the meaning of section 212 because the expenses were within the scope of the overall business plan of petitioners, within the framework of petitioners' other income-generating business activities, and reasonable in comparison with alternative means available to accomplish petitioners' business plan. Section 212 provides: In the case of an individual, there *24 shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year-- (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; or (3) in connection with the determination, collection, or refund of any tax. Section 1.212-1(d), Income Tax Regs., further provides: Expenses, to be deductible under section 212, must be "ordinary and necessary". Thus, such expenses must be reasonable in amount and must bear a reasonable and proximate relation to the production or collection of taxable income or to the management, conservation, or maintenance of property held for the production of income. An ordinary expense is one that is normally to be expected in view of the circumstances facing the business. Palo Alto Town & County Village, Inc. v. Commissioner,565 F.2d 1388, 1390 (9th Cir. 1977); Commissioner v. Heininger,320 U.S. 467 (1943). *25 A necessary expense is one that is appropriate and helpful to the business. Palo Alto Town & County Village, Inc. v. Commissioner,supra at 1390. Collateral to the issues of ordinary and necessary is the question of whether the expenditures were reasonable. Reasonableness is a question of fact to be determined in each individual case. Commissioner v. Heininger,supra.
The facts in this case are clearly distinguishable from those in Kinney v. Commissioner,66 T.C. 122 (1976). In Kinney, the taxpayer attempted to deduct expenses for trips during which he investigated large companies in which he owned stock. The taxpayer was unable to show that the trips had any significant relationship to his stock transactions. Appropriate areas of inquiry are: (1) whether petitioners had a dominant personal motive for these trips; (2) whether the costs were ordinary and necessary expenses paid for the purposes provided in section 212; (3) whether the trips bore a reasonable or proximate relation to the production of income or management of income-producing property; and (4) whether the costs themselves were reasonable. *26 See Kinney v. Commissioner,supra.
Respondent has offered mere speculation that Mr. Ballard had personal reasons for making these trips. The airplane in the instant case was used only for brief, unaccompanied trips to Marathon, and only when the needs of the property required Mr. Ballard's presence. Further, the plane was over 20 years old, and was not flown for pleasure. Petitioners demonstrated the appropriate purpose under section 212 by detailing reasons why managing the Marathon duplex required periodic visits. Although petitioners did not identify which particular purposes were served on any individual trip, Mr. Ballard supervised or arranged for repairs and maintenance, met with legal counsel and officials, and completed construction of a seawall. These efforts were obviously a contributing factor in the duplex's consistent production of income. Expenses of maintaining property for the production of income have been allowed as deductions even when there was no income at all from the property during the taxable year at issue. [6]
*27 The final factor, however, is whether these costs are reasonable. The expenses of operating and maintaining the airplane were clearly greater than the cost of flying by commercial airline, but also apparently more than the cost of leasing a comparable airplane. [7] Mr. Ballard attempted to use commercial flights as a standby passenger whenever possible. Petitioners failed, however, to present any evidence as to why Mr. Ballard could not have flown as a regular passenger instead of using petitioners' airplane when a standby seat was unavailable. The expenses of owning, operating, and maintaining the airplane were, therefore, excessive in relation to the costs of alternative means of transportation. The Commissioner allowed the expenses deducted by petitioners of the trips by commercial airlines during the years at issue, thus, in essence, conceding that these costs *28 were ordinary and necessary under section 212. We find that the additional trips were also ordinary and necessary under section 212, but that the costs were not reasonable to the extent that they exceed a maximum of $201 [8] for each round-trip. Petitioners may therefore deduct $1,206, $1,407, and $603 as additional expenses under section 212 for the taxable years 1977, 1978, and 1979, respectively. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, and attendant regulations as amended and in effect for the relevant years, and all rule references are to this Court's Rules of Practice and Procedure.↩
2. Petitioners purchased the vacant lot in 1969, and began to build the duplex in 1971. Petitioners' investment in the property was approximately $78,000. The property's value in 1979 was approximately $250,000.↩
3. The number of hours needed for each trip is not in evidence, although an approximation of 6 hours per round-trip was suggested in petitioners' brief.↩
4. Petitioners' operating expenses for the taxable year 1979 include interest paid in the amount of $725. Respondent concedes that this expense is deductible under section 163 irrespective of the deductibility of the remaining operating expenses. Maintenance costs increased by $4,205 between 1978 and 1979 because petitioners had to bring the airplane into compliance with a Federal Aviation Air Worthiness Directive.↩
5. The amounts conceded by respondent on brief, $1,100.06 and $1,943.78 for the taxable years 1978 and 1979, respectively, are not accurate, as respondent subtracted the expenses paid from the amounts disallowed, rather than subtracting the expenses claimed on petitioners' returns. Respondent also rounded off the expenses paid, while using exact numbers for the amounts disallowed. The amounts have been corrected to reflect that respondent has, in fact, conceded all of the rental expenses claimed on petitioners' returns.↩
6. Gorod v. Commissioner,T.C. Memo. 1981-632; Nelson v. Commissioner,T.C. Memo. 1978-287; Goddard v. Commissioner,T.C. Memo. 1962-83↩.
7. Airplane expenses in excess of the local rate for airplane charters are subject to the possibility of being disallowed as unreasonable in amount. Palo Alto Town & Country Village, Inc. v. Commissioner,T.C. Memo. 1973-223, revd. on other grounds 565 F.2d 1388↩ (9th Cir. 1977).
8. This amount is computed by using the standby fares of $40 and $27 for the round-trips from St. Louis to Miami and Miami to Marathon, respectively, and multiplying these figures by three to approximate the regular fare.↩