T.C. Memo. 1997-176


UNITED STATES TAX COURT


BENJAMIN H. AND DIANE E. ROBSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

LEROY C. AND HELEN E. TRNAVSKY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 23456-94, 23884-94.          Filed April 10, 1997.


<u>A. Lavar Taylor</u>, for petitioners.

<u>Ronald M. Rosen</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

FAY, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes and penalties for 1990 through 1992 as follows:

Benjamin H. Robson
& Diane E. Robson
Docket No. 23456-94

| Year | Deficiency | Penalty Sec. 6662(a)[1] |
|------|------------|--------------------------|
| 1990 | $17,033 | $194 |
| 1991 | 20,629 | 205 |
| 1992 | 18,035 | 256 |

[1]Respondent conceded that no amounts are due for penalties.

Leroy C. Trnavsky
& Helen E. Trnavsky
Docket No. 23884-94

| Year | Deficiency | Penalty Sec. 6662(a)[1] |
|------|------------|--------------------------|
| 1990 | $13,685 | $205 |
| 1991 | 11,776 | 222 |
| 1992 | 13,789 | 259 |

[1]Respondent conceded that no amounts are due for penalties.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The cases have been consolidated for trial, briefing, and opinion. After concessions, the issues for decision are:

(1) The fair market value of various wild game animal trophy mounts donated by petitioners; and (2) whether certain appraisal fees are deductible.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Whittier, California, at the time their petitions were filed.

During the years at issue, Dr. Benjamin H. Robson (petitioner Robson) and Dr. Leroy C. Trnavsky (petitioner Trnavsky) were orthodontists. Both petitioner Robson and petitioner Trnavsky are accomplished hunters. They have been on numerous hunting trips to locations around the world and have acquired various animal mounts over the course of many years of hunting. Petitioners maintained the animal mounts in trophy rooms at their respective homes.

Over the 3-year period from 1990 to 1992, petitioner Robson donated 30 animal specimens, including shoulder mounts and capes and horns, to various charitable organizations. Petitioner Robson claimed deductions for charitable contributions of $53,600, $67,100, and $61,300 for tax years 1990, 1991, and 1992, respectively. During this same period, petitioner Trnavsky donated 24 animal specimens to various charitable organizations and claimed deductions for charitable contributions of $39,500, $34,400, and $41,150 for tax years 1990, 1991, and 1992, respectively.

At the time petitioners made their donations, under California law it was illegal to sell any mounted animal specimens similar to petitioners' that were taken under a hunting license. Under Federal law, the interstate sale of any specimen sold in violation of California law constituted a Federal offense. However, despite these State and Federal restrictions, game mounts were sold in California. Further, while California has strict prohibitions on the sale of mounted wildlife, many of the Western States located near California, such as New Mexico, Arizona, Montana, and Washington, have relatively few restrictions on the sale of mounted game trophies.

On their Federal income tax returns, petitioners based the value of their contributions on appraisals performed by R. Bruce Duncan (Mr. Duncan) of Chicago Appraisers Association (CAA). Petitioners Robson paid CAA $4,323.52, $3,710, and $4,166 in 1990, 1991, and 1992 and claimed deductions for these amounts each year. Petitioners Trnavsky also claimed deductions for appraisal fees paid to CAA of $3,891.48, $3,140, and $3,333 for 1990, 1991, and 1992, respectively. At trial, however, Mr. Duncan was not called as a witness, and petitioners did not rely on his appraisals at trial. Rather, petitioners now rely on the appraisal and testimony of Jack Perry (Mr. Perry), their expert witness at trial.

Respondent, in her notice of deficiency to petitioners Robson, disallowed all charitable contribution deductions for

1990, 1991, and 1992 because she determined that petitioners Robson had failed to demonstrate the fair market value of the donated items.  For the same reason, respondent also disallowed all charitable contribution deductions claimed by petitioners Trnavsky for the years at issue.  Respondent concedes that section 212 provides a deduction for reasonable appraisal fees paid to value a charitable contribution.  However, respondent amended her answers to the petitions and now contests as unreasonable the amount of the appraisal fees deducted by petitioners.

## OPINION

Value of Charitable Contributions

Section 170(a) provides a deduction for charitable contributions made to qualified entities during the taxable year.  The regulations provide that, if property other than money is donated, the amount of the contribution is the fair market value of the property at the time of the contribution.  Sec. 1.170A-1(c)(1), Income Tax Regs.  Section 1.170A-1(c)(2), Income Tax Regs., defines "fair market value" as the price at which property would change hands between a willing buyer and a willing seller, neither being under a compulsion to buy or sell, and both having reasonable knowledge of the relevant facts.

The determination of fair market value of donated property is a factual inquiry.  Estate of DeBie v. Commissioner, 56 T.C.

876, 894 (1971).  Petitioners bear the burden of proof.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

There is no disagreement that the donations were actually made by petitioners.  There is significant disagreement over the value of the donated game mounts.  Petitioners and respondent presented expert testimony, and submitted expert reports, concerning the value of these game mounts.  The ultimate findings of the respective experts are set out in the attached appendix.

Respondent primarily relies on the testimony of Alan Zanotti (Mr. Zanotti).  Mr. Zanotti founded his company, the African Import Company, in 1986, after he determined that there was a large supply of game mounts within the United States available for sale.  From the inception of his company to the present day, Mr. Zanotti has sold between 3,500 and 4,000 game items.  He indicated that there was an active market for the items involved in this case.  Additionally, Mr. Zanotti has personally purchased or sold many items similar to those donated by petitioners. Mr. Zanotti believes that he would be able to assemble a collection comparable to petitioners' by purchasing items on the open market.  In fact, Mr. Zanotti currently has in his inventory many of the same type of game mounts as those donated by petitioners.

Respondent submitted the report of another expert, Herbert C. Curry (Mr. Curry).  Mr. Curry is a special agent with the Fish and Wildlife Service.  Mr. Curry, a hunter and a collector of animal specimens, has extensive experience in investi-

gating violations of Federal and State wildlife laws.  Through undercover work involved in his position with the Fish and Wildlife Service, Mr. Curry has personally purchased and sold game mounts, and he has been involved with the investigation of other sales of wildlife.  Mr. Curry asserted that, despite his department's efforts, an illegal market in game mounts existed in California during the years at issue.

Mr. Curry submitted a report in which he summarized the price range at which various game mounts were sold in California.  Mr. Curry's report contained price ranges for those animal specimens with which he had gained familiarity through the performance of his duties as an agent.  His price ranges in most cases were in line with the amounts contained in Mr. Zanotti's report.

Petitioners rely exclusively on the testimony of Mr. Perry.  Mr. Perry is on the board of the World Wildlife Museum,[1] and he has substantial experience in the field of taxidermy.

Mr. Perry bases his appraisals on the replacement cost methodology.  Replacement cost is the total cost the hunter incurred in going on the hunt and related costs such as trophy fees, taxidermy costs, and travel expenses.  If more than one

---

[1]Mr. Perry admitted that he was motivated to perform appraisals by factors other than the fees he charged.  In fact, he candidly stated that his "ulterior motive" in performing appraisals was to encourage the donation of animal specimens to museums.

specimen is harvested on a trip, the cost of the trip is prorated over each specimen.  Mr. Perry then adjusts the values, based upon factors such as the quality of the specimen and its rarity. He believes that this is the only proper way to value animal specimens, because he views each specimen as a unique object.

Replacement cost is a relevant measure of value where the property is unique, the market is limited, and there is no evidence of comparable sales.  Estate of Palmer v. Commissioner, 839 F.2d 420, 424 (8th Cir. 1988), revg. 86 T.C. 66 (1986).  We find, contrary to Mr. Perry's beliefs, that there is a market throughout the United States for items comparable to those donated by petitioners.

Petitioners argue that there are no comparable sales, because residents in California are prohibited from selling game mounts.  We reject this contention.  Petitioners' argument, taken to its logical conclusion, would result in their mounts' having no value, as California residents could never sell them. Mr. Curry testified, however, that prices for game mounts in California are equivalent to prices in States that do not place restrictions on sales.  Thus, the restrictions imposed by California law do not materially affect the value of petitioners' game mounts.  We therefore cannot accept Mr. Perry's valuations, as petitioners have not demonstrated that their replacement cost

analysis has a correlation to fair market value in this case.[2]
See Epping v. Commissioner, T.C. Memo. 1992-279.

We conclude that an active market exists throughout the
United States for substantially comparable items. Petitioners
have not presented any evidence of comparable sales, relying
solely on Mr. Perry's valuations. Consequently, petitioners have
failed to carry their burden of proving that the donated game
mounts are worth more than the amount established by respondent
at trial. Thus, we conclude that, based on respondent's
appraisal, the animal specimens donated by petitioner Robson have
a fair market value of $29,100, and the specimens donated by
petitioner Trnavsky have a fair market value of $16,600.[3]

Deductibility of Appraisal Fees

Respondent does not dispute that appraisal fees are deduct-
ible under section 212(3) but contends that the amount of fees
paid for Mr. Duncan's services is unreasonable, and, therefore,

---

[2]Estate of Miller v. Commissioner, T.C. Memo. 1991-515,
affd. without published opinion 983 F.2d 232 (5th Cir. 1993), is
distinguishable. In Estate of Miller, the taxpayer donated
numerous animal mounts to the State of Louisiana and claimed
charitable contribution deductions. Replacement cost was
probative in the Estate of Miller case because the Court found
that no comparable items could be obtained in the market. Here,
respondent has successfully demonstrated that items comparable to
petitioners' did exist in the market.

[3]The fair market value of petitioner Robson's charitable
contributions is $7,550, $12,125, and $9,425 for 1990, 1991, and
1992, respectively. The fair market value of petitioner
Trnavsky's charitable contributions is $5,750, $4,000, and $6,850
for 1990, 1991, and 1992, respectively. For a more detailed
listing of each donation, see appendix, infra.

only a portion of the fees actually paid to CAA is deductible. Because this issue was first raised by respondent in her amended answers to the petitions, she carries the burden of proof.

To be deductible under section 212, an expense must meet the ordinary and necessary test. Sec. 1.212-1(d), Income Tax Regs. Thus, the expenses must be reasonable in amount and bear a reasonable and proximate relation to the purpose for the expenditure. Id. The determination of reasonableness is based on the facts and circumstances. See Palo Alto Town & Country Village, Inc. v. Commissioner, 565 F.2d 1388 (9th Cir. 1977), affg. in part and remanding T.C. Memo. 1973-223.

Petitioner Robson claimed deductions of $4,323.52, $3,170, and $4,166 for appraisal fees paid to CAA. Petitioner Trnavsky deducted $3,891.48, $3,140, and $3,333 for the appraisal fees that he paid to CAA. Respondent did not dispute that these fees were actually paid to CAA. Nor did respondent present any evidence to indicate that CAA charged petitioners more than it charged other taxpayers to perform museum appraisals. Respondent has not carried her burden to show that the fees paid were unreasonable. Accordingly, we find for petitioners on this issue.

Based on the foregoing,

Decision will be entered

under Rule 155.

APPENDIX

Dr. Benjamin Robson 1990:

| Item No. | Species | Type | Perry | Zanotti | Curry |
|---|---|---|---|---|---|
| 1-R | Roosevelt elk (wapiti) | Shoulder mount | $5,500 | $650 | $800 |
| 2-R | Barren ground caribou | Shoulder mount | 4,500 | 900 | 600-800 |
| 3-R | Pronghorn antelope | Shoulder mount | 3,000 | 550 | 200-600 |
| 4-R | Pronghorn antelope | Shoulder mount | 3,000 | 500 | 200-600 |
| 5-R | Blesbok | Shoulder mount | 5,500 | 700 | -- |
| 6-R | Tsessebe (sassaby) | Shoulder mount | 3,750 | 700 | -- |
| 7-R | Gemsbok (oryx) | Shoulder mount | 4,700 | 900 | -- |
| 8-R | White tailed gnu /black wildebeest | Shoulder mount | 4,500 | 800 | -- |
| 9-R | Mule deer | Shoulder mount | [1]-0- | 500 | 200-800 |
| 10-R | Mule deer | Shoulder mount | 4,000 | 650 | 200-800 |
| 11-R | Mule deer | Shoulder mount | 4,000 | 700 | 200-800 |
|  | Total |  | 42,450 | 7,550 |  |

[1]Petitioners' appraiser did not include a value for this mount in his expert report.

Dr. Benjamin Robson 1991:

| Item No. | Species | Type | Perry | Zanotti | Curry |
|----------|---------|------|-------|---------|-------|
| 12-R | Blacktail deer | Cape & horns | $3,500 | $225 | $200-800 |
| 13-R | Blacktail deer | Cape & horns | 3,500 | 250 | 200-800 |
| 14-R | Barbary sheep (aoudad) | Shoulder mount | 4,500 | 850 | 400-800 |
| 15-R | Steenbok | Shoulder mount | 2,750 | 475 | -- |
| 16-R | Bush duiker | Shoulder mount | 3,250 | 550 | -- |
| 17-R | Pronghorn antelope | Shoulder mount | 3,200 | 475 | 200-600 |
| 18-R | Mule deer | Shoulder mount | 3,500 | 650 | 200-800 |
| 19-R | Mule deer | Shoulder mount | 4,000 | 650 | 200-800 |
| 20-R | Altai argali sheep | Full skin & horns | 27,500 | 8,000 | 200-800 |
|  | Total |  | 55,700 | 12,125 |  |

Dr. Benjamin Robson 1992:

| Item No. | Species | Type | Perry | Zanotti | Curry |
|----------|---------|------|-------|---------|-------|
| 21-R | Bighorn sheep | Shoulder mount | $12,000 | $3,000 | $500-2,500 |
| 22-R | Greater kudu | Shoulder mount | 4,700 | 950 | -- |
| 23-R | Greater kudu | Shoulder mount | 5,000 | 850 | -- |
| 24-R | Roosevelt elk (wapiti) | Shoulder mount | 6,500 | 750 | 800 |
| 25-R | Springbok | Shoulder mount | 3,250 | 600 | -- |
| 26-R | Gray duiker | Shoulder mount | 3,750 | 550 | -- |
| 27-R | Spanish stag | Shoulder mount | 8,500 | 825 | -- |
| 28-R | Corsican ram (sheep) | Shoulder mount | 3,000 | 750 | -- |
| 29-R | Blacktail deer | Shoulder mount | 2,700 | 600 | 200-800 |
| 30-R | Axis deer | Shoulder mount | 3,200 | 550 | -- |
| | Total | | 52,600 | 9,425 | |

Dr. Leroy Trnavsky 1990:

| Item No. | Species | Type | Perry | Zanotti | Curry |
|---|---|---|---|---|---|
| 1-T | Common waterbuck | Shoulder mount | $4,000 | $700 | -- |
| 2-T | Barren ground caribou | Shoulder mount | 5,000 | 900 | $600-800 |
| 3-T | Defassa waterbuck | Shoulder mount | 5,200 | 750 | -- |
| 4-T | Spanish wild boar | Tanned cape | 3,000 | 200 | -- |
| 5-T | Blesbok | Shoulder mount | 5,500 | 700 | -- |
| 6-T | Water Buffalo | Shoulder Mount | 5,000 | 1,600 | -- |
| 7-T | Mountain Goat | Shoulder Mount | 5,000 | [1]250 | 1,200 |
| 8-T | Mule Deer | Shoulder Mount | 2,700 | 650 | 200-800 |
| | Total | | 35,400 | 5,750 | |

[1]Mr. Zanotti's report indicates that this mount was damaged. Therefore, his valuation reflects an amount that is less than that for a typical mountain goat mount in an undamaged condition.

Dr. Leroy Trnavsky 1991:

| Item No. | Species | Type | Perry | Zanotti | Curry |
|----------|---------|------|-------|---------|-------|
| 9-T | Blacktail deer | Cape & horns | $3,500 | $225 | $200-800 |
| 10-T | Blacktail deer | Cape & horns | 3,500 | 250 | 200-800 |
| 11-T | Blacktail deer | Shoulder mount | 2,700 | 600 | 200-800 |
| 12-T | Barbary sheep (aoudad) | Shoulder mount | 4,500 | 850 | 400-800 |
| 13-T | Steenbok | Shoulder mount | 2,750 | 475 | -- |
| 14-T | Kirk's dik-dik | Shoulder mount | 3,700 | 475 | -- |
| 15-T | Pronghorn antelope | Shoulder mount | 3,000 | 475 | 200-600 |
| 16-T | Mule deer | Shoulder mount | 3,500 | 650 | 200-800 |
| | Total | | 27,150 | 4,000 | |

Dr. Leroy Trnavsky 1992:

| Item No. | Species | Type | Perry | Zanotti | Curry |
|----------|---------|------|-------|---------|-------|
| 17-R | Pronghorn antelope | Shoulder mount | $3,000 | $500 | $200-600 |
| 18-R | Roosevelt elk (wapiti) | Shoulder mount | 6,500 | 750 | 800 |
| 19-R | Cape buffalo | Shoulder mount | 5,000 | 1,200 | -- |
| 20-R | Bison | Shoulder mount | 3,000 | 1,600 | 1,200 |
| 21-R | Coues deer | Shoulder mount | 3,500 | 600 | 300-600 |
| 22-R | Coues Deer | Shoulder Mount | 3,500 | 600 | 300-600 |
| 23-R | Whitetail deer | Shoulder mount | 2,700 | 900 | -- |
| 24-R | Red lechwe | Shoulder mount | 3,200 | 700 | -- |
| | Total | | 30,400 | 6,850 | |